IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **WESTGATE RESORTS, LTD.,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00599** |
| | ) | **Judge Aleta A. Trauger** |
| **WESLEY FINANCIAL GROUP, LLC,** | ) | |
| **and CHARLES WILLIAM** | ) | |
| **McDOWELL, III,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Before the court is the Motion to Dismiss Count III and supporting Memorandum of Law (Doc. Nos. 105, 106), filed by defendants Wesley Financial Group, LLC and Charles William McDowell, III (collectively referred to herein as "Wesley" or "defendant," in the singular, unless necessary to distinguish between them). Wesley seeks dismissal of Count III of the Amended Complaint for Injunctive Relief and Damages (Doc. No. 104), which asserts violations of the Tennessee Consumer Protection Act of 1977 ("TCPA"), Tenn. Code Ann. §§ 47-18-101 *et seq.* For the reasons set forth herein, the motion will be denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the Amended Complaint, the plaintiffs are sixteen related entities, all with "Westgate" in their name (collectively referred to herein, in the singular, as "Westgate" or "plaintiff"), that are in the business of "developing, financing, managing, and selling timeshare resort properties throughout the United States." (Doc. No. 104, at 1 & ¶ 1.) Wesley Financial Group is in the business of "target[ing] and disrupt[ing] valid contracts between timeshare developers,

like Westgate, and their customers." (*Id.* ¶ 2.) Charles McDowell is Wesley Financial Group's CEO.[1]

According to Westgate, it has valid and enforceable contracts with its customers, including timeshare purchase agreements and mortgage financing agreements, and its customers' compliance with these valid contracts is "of utmost importance to Westgate's business." (*Id.* ¶¶ 43–46.) It alleges that Wesley engages in "aggressive television, radio, social media, and internet advertising campaigns," as well as "telephone and email marketing tactics," in which it makes "false and misleading promises with a '100% guarantee' that Wesley can legally relieve timeshare owners of their obligations, including owners of Westgate timeshare interests." (*Id.* ¶¶ 4, 5.) According to Westgate, Wesley's "timeshare cancellation scheme" has "no legitimate legal foundation" and is designed instead to induce existing Westgate customers to breach their valid contracts with Westgate "in order to steer Westgate owners to instead pay large, upfront sums to Wesley for its pecuniary gain." (*Id.* ¶ 49.) Wesley allegedly directs its customers, who are also Westgate customers, to keep their relationship with Wesley secret from Westgate; it operates under a "veil of secrecy," because no timeshare company, including Westgate, will work with a customer to terminate the timeshare relationship if it knows the customer is working with Wesley. (*Id.* ¶¶ 9–10.)

Westgate asserts that Wesley's promises are untrue, because "Wesley does not have a legally cognizable method of actually accomplishing what Wesley promises." (*Id.* ¶ 51.) Wesley's advertisements also allegedly contain false or misleading representations about timeshare companies generally, including such statements as "Your Maintenance Fees Will Rise for

---

[1] Westgate alleges that "McDowell directs and controls Wesley's activities which are the subject of this lawsuit and/or controls others whom McDowell has directed to do so" and that "all actions attributable to Wesley are also attributable to McDowell." (Doc. No. 1 ¶ 50.)

Eternity" and "your children will be stuck with your timeshare after you pass." (*Id.* ¶ 54.) It falsely claims a "90%+" success rate in assisting its customers in extricating themselves from timeshare contracts. (*Id.* ¶ 56.) And its advertisements contain false and misleading testimonials from other customers claiming to have been helped to cancel their timeshare mortgages and even to have received "substantial refunds on payments that have already been made," when Wesley knows that the only action it takes is to "simply advise its customers to breach their contracts, with no legitimate cause or justification." (*Id.* ¶ 57.)

Even though McDowell is not an attorney and the "overwhelming majority" of Wesley employees who advise customers are not attorneys, Wesley's employees "repeatedly and falsely make[] statements indicating that Wesley has legal expertise regarding the cancelation of timeshare contracts, stating in various online videos that 'you can legally get out of your timeshare,' or offering testimonials proclaiming that Wesley 'know[s] all of the laws.'" (*Id.* ¶ 58.)

Westgate contends that timeshare owners who contact Wesley for advice are asked pretextual questions about whether the owner was lied to or misled during the timeshare purchase process. (*Id.* ¶ 60.) Westgate classifies these questions as pretextual, because "Wesley has no real intention of pursuing any legal claims, legitimate or otherwise, on behalf of these owners" and instead seeks to mislead the customers into believing that Wesley is "gathering evidence to support a strategy that will allow the owner to legally cancel or terminate his or her timeshare interest" and to make it appear that Wesley is actually "earning its exorbitant fees." (*Id.* ¶ 61.) But Wesley's purported legal strategy is a "hoax" that consists of simply telling its customers to default on their agreements with Westgate, which can adversely impact the timeshare owners' credit scores and even result in their being sued, which Wesley conceals from its customers. (*Id.*) It directs its customers to communicate directly with the timeshare company, without revealing that they are

working with Wesley, and to accuse the company of "deception during the sales process, even though such conduct did not occur." (*Id.* ¶ 62.) At times, Wesley's representatives have communicated directly with Westgate, falsely claiming to be Westgate owners and making similarly false accusations. (*Id.* ¶ 63.)

Westgate asserts that it has been directly damaged by Wesley's false and misleading representations to Westgate's own customers by causing them to stop making payments on their Westgate promissory notes and mortgages and/or stop paying maintenance and other fees contractually owed to Westgate. (*Id.* ¶ 65.)

Based on these allegations, Westgate asserts claims in the Amended Complaint for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, and violation of the TCPA. It specifically asserts that Wesley engaged in false advertising and unfair and deceptive acts and practices in the conduct of trade or commerce, as those terms are defined by the TCPA, that both Westgate and Wesley fall within the statutory definition of "person[s]" engaged in "trade" or "commerce," and that Wesley has engaged in specific practices identified as unlawful in Tenn. Code Ann. § 47-18-104(b), subsections (5), (7), (8), (9), (12), (14), (15), (19), (21), and (22). (*See* Doc. No. 1 ¶¶ 93–100.) Westgate seeks damages as well as declaratory relief and an injunction prohibiting Wesley from continuing to engage in the allegedly illegal conduct.

Wesley's Motion to Dismiss targets only the TCPA claim. Westgate has filed a Response in opposition to the Motion to Dismiss (Doc. No. 108), and Wesley filed a Reply (Doc. No. 109)

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 556.

In addition, misrepresentation claims under the TCPA are generally subject to the "particularity" requirement of Rule 9, which requires that a party asserting a fraud claim "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Bridgestone Ams., Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016); *see also Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999) (recognizing that Tennessee's equivalent rule, Tenn. R. Civ. P. 9.02, applies to TCPA claims).[2]

## III. DISCUSSION

Wesley argues that the TCPA claim is subject to dismissal because (1) Westgate lacks "standing" under the TCPA because it "was not acting as a consumer in any of the transactions at

---

[2] The courts do not appear to have addressed whether the enhanced pleading requirement applies to *all* claims under the TCPA, which provides a cause of action based not merely on fraudulent misrepresentations, but also on "unfair or deceptive act[s] [and] practice[s]." Tenn. Code Ann. § 47-18-109(a)(1). Tennessee courts recognize that "[t]he concept of deceptiveness is a broader, more flexible standard of actionable . . . misconduct than the traditional remedy of common-law fraud" and that "[t]he concept of unfairness is even broader than the concept of deceptiveness." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005).

issue" (Doc. No. 106, at 4); (2) even if it has standing, Westgate should be limited under the statute to its claim of disparagement in violation of Tenn. Code Ann. § 47-18-104(b)(8),[3] but, even thus limited, the claim should be dismissed as inadequately pleaded; and (3) even assuming that Westgate has general standing under the TCPA, the Amended Complaint fails to allege facts that, if true, establish violations of most of the other specific subsections of § 47-18-104(b) identified in the pleading or satisfy Rule 9(b)'s particularity requirement.

### A.    "Standing" under the TCPA

The TCPA provides a private right of action to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109(a)(1). "[A]nyone affected by a violation of this part" may bring an action to recover damages as well as for declaratory relief. *Id.*; Tenn. Code Ann. § 47-18-109(b). "Person" is defined to include both "a natural person" and virtually every type of business entity, including a corporation and "any other legal or commercial entity however organized." *Id.* § 47-18-103(14). "'Trade,' 'commerce,' [and] 'consumer transaction'" are defined collectively as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." *Id.* § 47-18-103(20). "[U]nfair or deceptive acts or practices" prohibited by the TCPA are those "affecting the conduct of any trade or commerce" and enumerated in § 47-18-

---

[3] This subsection prohibits "[d]isparaging the goods, services, or business of another by false or misleading representations of fact." Tenn. Code Ann. § 47-18-104(b)(8).

104(b). This provision incorporates a fairly exhaustive list of fifty-two types of acts that are deemed unlawful under the Act. *Id.* § 47-18-104(b)(1)–(52).[4]

Thus, to state a claim for violation of the TCPA, the plaintiff is required to show "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated[.]'" *Tucker*, 180 S.W.3d at 115 (quoting Tenn. Code Ann. § 47-18-109(a)(1)). The TCPA "is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992); *see also* Tenn. Code Ann. § 47-18-102.

Despite the breadth of the statute, Wesley asserts that Westgate does not have "standing" to bring a claim under the TCPA.[5] Its convoluted argument goes something like this: (1) Tenn. Code Ann. § 47-18-109 creates a private right of action to "[a]ny person"—which Wesley

---

[4] Section 47-18-104(b)(27), the "catch-all" provision, broadly prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person," but only the Tennessee Attorney General may enforce this provision. *Id.*

[5] Although the defendant employs the term "standing," it does not invoke Rule 12(b)(1) or question the court's subject matter jurisdiction. What it really means by "standing" is that the plaintiff fails to state a claim for which relief may be granted based on the text of the statute. As this court has previously observed, in a context similar to that presented here, there is a distinction between constitutional standing and such "statutory standing":

> If a plaintiff has standing in a bare-minimum constitutional sense—which a competitor alleging past or imminent economic harm typically will, *see Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 411 (6th Cir. 2012) ("[E]vidence of competitive harm is enough to show an injury in fact for standing purposes.")—then the question of whether he can proceed under a particular cause of action is an issue of interpreting the scope of the cause of action, not "standing" as the term is typically used.

*Ciccio v. SmileDirectClub, LLC*, No. 3:19-CV-00845, 2020 WL 2850146, at *13 (M.D. Tenn. June 2, 2020) (Trauger, J.) (citing *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016)).

concedes is defined to include corporations and business entities—"who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)," Tenn. Code Ann. § 47-18-109(a)(1); (2) section 47-18-109(a)(1) expressly cross-references § 47-18-104(b), which lists numerous "unfair or deceptive practices" that violate the statute, but these acts or practices violate the TCPA only to the extent that they "affect[] the conduct of any *trade or commerce*," Tenn. Code Ann. § 47-18-104(a) (emphasis added); (3) the TCPA's definition section uses and defines the terms "trade" and "commerce" "interchangeably with the term 'consumer transaction'" (Doc. No. 106, at 6), defining them all to mean the "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated," Tenn. Code Ann. § 47-18-103(20); and (4) combining this definition with § 47-18-104(a)'s requirement that the challenged acts affect trade or commerce, according to Wesley, the Tennessee Supreme Court has concluded that acts or practices, "'even if considered to be unfair or deceptive,' are actionable only to the extent they 'affect the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property. . . .'" (Doc. No. 106, at 6 (quoting *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 841 (Tenn. 1996) (some internal quotation marks omitted)).) That is, "even if an act or practice is unfair or deceptive, it only violates the TCPA to the extent that it affects a consumer transaction." (*Id.*) From this, Wesley extrapolates that only one who is a consumer with respect to a consumer transaction has statutory standing to bring suit for violation of the TCPA. It cites numerous federal[6]

---

[6] *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3-12-0463, 2015 WL 6872575, at *3 (M.D. Tenn. Nov. 9, 2015) (holding that the plaintiff could not bring suit under the TCPA because it was "acting as a seller with regard to Defendant, offering goods and services to Defendant per their Contract"); *LP Env't, LLC v. Delfasco, LLC*, No. 3:14-cv-2167, 2015 WL 13145789, at *2 (M.D. Tenn. July 23, 2015) (dismissing TCPA claims, stating: "Tennessee courts have consistently

and state[7] court opinions that it characterizes as holding that a person, whether a business entity or a natural person, is authorized to bring suit under the statute only if it acted as a "consumer" in the transaction. (*Id.* at 7–8.)

Wesley recently raised an identical challenge in a suit filed against it in the Eastern District of Tennessee by a different set of plaintiffs engaged in the timeshare business, relying largely on the same authority. As that court recognized in disposing of this same argument, the federal district court opinions on which Wesley relies, predominantly from this court, are factually distinguishable:

> [T]he line of cases from the Middle District of Tennessee deals with the situation in which the plaintiff is the party offering goods or services to the defendant. Thus, each transaction fell outside the scope of the TCPA because the defendants were not performing acts or practices affecting the conduct of trade or commerce. In other words, the defendants were not "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47-18-103(20).

---

held that the TCPA only applies to limit the conduct of sellers, not consumers."); *S. Pharm. Consultants, LLC v. Smart Fill Mgmt. Grp., Inc.*, No. 3:13-cv-1100, 2015 WL 1428477, at *2 (M.D. Tenn. Mar. 27, 2015) (holding that the TCPA did not apply because the plaintiff was a seller, "not a 'consumer' as defined by the Act"); *Withco, LLC v. Republic Servs. of Tenn., LLC*, No. 3:09-1207, 2011 WL 1099905, at *5 (M.D. Tenn. Mar. 23, 2011) (holding that the claims did not fall within the scope of the TCPA, because "[t]he complaint does not allege that Plaintiffs sought or acquired any 'goods, services or property'"); *Operations Mgmt. Int'l, Inc. v. Tengasco, Inc.*, 35 F. Supp. 2d 1052, 1058 (E.D. Tenn. 1999) (granting summary judgment on a counterclaim asserting violations of the TCPA, because the counter-plaintiff/defendant "was not buying anything from [the plaintiff]" and the parties' relationship could not be "characterized as any type of consumer transaction").

[7] *Hood Land Tr. v. Hastings*, No. M2009-02625-COA-R3-CV, 2010 WL 3928647, at *10 (Tenn. Ct. App. Oct. 5, 2010) ("We find nothing in the TCPA that contemplates 'protecting' a seller from a prospective buyer who decides not to buy."); *Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn.*, 229 S.W.3d 304, 307 & 311 (Tenn. Ct. App. 2007) (dismissing TCPA claims where the plaintiff neither performed nor consumed services and its "connection to the trade and commerce" between its physician members who sold services to the defendants, was "too remote to qualify for the protections of the Act"); *Wagner v. Fleming*¸ 139 S.W.3d 295, 301 (Tenn. Ct. App. 2004) (seller of property did not state a claim under the TCPA).

*Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00251-DCLC-DCP, 2020 WL 7062845, at *3 (E.D. Tenn. Nov. 9, 2020). Similarly, in the lone case from the Eastern District, the counter-defendant was not alleged to have "advertised or offered for sale or distributed any type of goods or services." *Tengasco, Inc.*, 35 F. Supp. 2d at 1058.

The court found that Wesley, in contrast, "is clearly engaged in acts or practices affecting the conduct of trade or commerce because it advertises and offers services for sale." *Diamond Resorts*, 2020 WL 7062845, at *3. And the Tennessee Supreme Court has expressly held that it is "irrelevant whether a corporation is a 'consumer' under the [TCPA] because the right of action is given to 'person[s],' a term that is specifically defined to include corporations." *ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 629 (Tenn. 2000). Thus, as the court concluded in *Diamond Resorts*,

> [b]ased on the plain language of the Act, liberal interpretation is required specifically to "protect consumers and *legitimate business enterprises*." Tenn. Code Ann. § 47-18-102(2) (emphasis added). Moreover, Congress amended the Act in 1989 to allow a "consumer or other person" to recover under § 47-18-109(a). *ATS Se., Inc.*, 18 S.W.3d at 628. Constraining the private right of action solely to consumers, as Wesley suggests, renders the inclusion of "other persons" meaningless. Although the "parameters of the Act . . . do not extend to every action of every business in the State," *Pursell*[, 937 S.W.2d at 841], the Act applies to Wesley's business activities at issue because such advertisements and services affect "the conduct of any trade or commerce." *See* Tenn. Code Ann. § 47-18-104(b).

2020 WL 7062845, at *4.

This court, too, has previously refused to dismiss TCPA claims against a timeshare cancellation company based on a similar statutory standing argument. In *Diamond Resorts International, Inc. v. Phillips*, No. 3:17-cv-1124, 2018 WL 3326443, at *4 (M.D. Tenn. Jan. 24, 2018) (Trauger, J.), the court held that "[t]he *prima facie* elements for a TCPA claim do not require that the deceptive act or practice be directed toward" the plaintiff and that the plaintiff was required only to "show that the defendant's wrongful conduct proximately caused [its] injury." *Accord*

*Wyndham Vacation Resorts, Inc. v. Consultant Grp.*, No. 2:12-cv-00096, 2014 WL 1922791, at *13 (M.D. Tenn. May 14, 2014) (Trauger, J.) ("[U]nder appropriate circumstances, the TCPA countenances claims by corporations against defendants alleged to have engaged in unlawful business practices, even where the unlawful practices by a defendant were directed at third parties—here, the timeshare owners—rather than at that corporation.").

More recently, in *Ciccio v. SmileDirect Club*, the undersigned denied a motion to dismiss TCPA claims brought against the defendants by competitor entities, noting that the defendants did not "cite any cases from Tennessee state courts for the proposition that a competitor cannot sue under the TCPA based on an 'ascertainable loss of money' in the form of lost business," 2020 WL 2850146, at *13, and, instead, relied primarily on U.S. district court cases, particularly *PHG Technologies, LLC v. St. John Companies*, 459 F. Supp. 2d 640 (M.D. Tenn. 2006) (Echols, J.). As the court noted in *Ciccio*, "the very brief standing analysis in *PHG Technologies*, however, did not rely on the text of the TCPA, but rather a citation to general Article III standing principles, particularly those in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)." *Id.* at *13.

In this case, Wesley does not contend that Westgate lacks Article III standing, and the court continues to find that the text of the TCPA itself governs the resolution of the "statutory standing" question it does raise. Other decisions from this district are in accord. *See, e.g.*, *Asurion, LLC v. SquareTrade, Inc.*, 407 F. Supp. 3d 744, 751–52 (M.D. Tenn. 2019) (Campbell, J.) (expressly finding that a competitor may bring claims under the TCPA); *Affinion Benefits Grp., LLC v. Econ-O-Check Corp.*, 784 F. Supp. 2d 855, 879 (M.D. Tenn. 2011) (Wiseman, S.J.) ("[I]t is clear that Affinion's status as a competitor and a corporation does not deprive it of standing to bring a claim under the TCPA."); *RyMed Techs., Inc. v. ICU Med., Inc.*, No. 3:10-01067, 2012 WL 4505896, at *2 (M.D. Tenn. Sept 28, 2012) (Sharp, J.) (recognizing that "the fact that [the defendant] is a

competitor of [the plaintiff], and not one of its customers, is not an automatic bar to a TCPA claim").

In sum, the court finds that Westgate has statutory standing to assert claims against Wesley under the TCPA, despite not having been engaged in a consumer relationship with Wesley.

### B.    Limiting Standing to Claims Under § 47-18-104(b)(8)

Wesley then argues that, if the court is inclined to find that Westgate can bring claims at all under the TCPA, it should be limited to claims under Tenn. Code. Ann. § 47-18-104(b)(8), which prohibits "[d]isparaging the goods, services or business of another by false or misleading representations of fact." The argument appears to be based on a very narrow reading of this court's holding in *Wyndham Vacation Resorts*, in which the undersigned rejected many of the same arguments raised here. In particular, in disposing of the argument that only a "consumer" can bring suit under the TCPA, the court noted that "many of the enumerated deceptive business practices in TCPA § 104 apply more naturally to an entity 'affected . . . as a result of' the deceptive practice (§ 109(a)(1)), even where the affected entity was not a 'consumer; with respect to the transaction at issue." 2014 WL 1922791, at *13. The court referenced § 104(b)(8) as just one example. *Id.*

Based on the discussion above, the court declines to limit Westgate's ability to assert claims under the TCPA only to "disparagement" claims that fall within § 104(b)(8). *Accord Diamond Resorts*, 2020 WL 7062845, at *5 (rejecting the same claim, stating: "this Court has previously held that 'the *prima facie* elements for a TCPA claim do not require that the deceptive act or practice be directed toward the plaintiff'" (quoting *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 798 (E.D. Tenn. 2009))).

### C.   Failure to State a Claim Under § 47-18-104(b), Subsections (7), (8), (12), (14), (19), (21), and (22)

Wesley states that, to the extent the court finds that Westgate has generalized standing to assert claims under the TCPA, it does not seek the dismissal of Westgate's claims under § 47-18-104(b), subsections (5) (prohibiting representations that services have "benefits . . . that they do not have) and (9) (prohibiting advertising services "with intent not to sell them as advertised"). (*See* Doc. No. 106, at 18 n.4.)

It does, however, argue that the Amended Complaint fails to state a claim for a violation of the other referenced subsections of § 47-18-104(b), including subsection (b)(8). Wesley argues that nearly all of these provisions "relate exclusively to advertisements and other representations or omissions in the *sales* process" (Doc. No. 106, at 16) but that the allegations in the Amended Complaint go beyond the initiation of a consumer relationship during the sales process. It asserts that the allegations extend to false and misleading representations allegedly made to individuals who have already signed up and become Wesley customers, as well as to actions (or inaction) and adverse consequences occurring after Westgate customers have entered into contracts with Wesley. According to Wesley, these allegations, insofar as they relate "exclusively to Wesley's conduct after it has entered into a contract with a customer," are irrelevant, because the alleged conduct "does not violate any of the subsections identified in the Amended Complaint. (*Id.* at 17.)

In response, Westgate argues that Wesley construes the statute too narrowly. The court agrees that the statute "does not have such a short reach." *Diamond Resorts*, 2020 WL 7062845, at *5. As the Eastern District concluded in addressing the same argument,

> the TCPA covers "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(b). The Act's definition of "trade" and "commerce" includes "the distribution of . . . services." *Id.* § 47-18-103(20). Generally, the distribution of services involves creation of a contractual relationship before services are rendered. Therefore, Wesley's contention that post-contract actions do not affect the conduct of trade or commerce is directly in conflict

with the TCPA's definition of "trade" and "commerce" and would prevent a vast number of claims for unfair or deceptive practices or acts performed through the distribution of services.

*Id.*

Wesley also addresses each individual subsection of the statute referenced in the Amended Complaint, explaining its contention that the pleading fails to allege facts to support claims for violation of each and also arguing that the claims are not pleaded with the particularity required by Rule 9(b). Westgate defends its claims under each of the referenced subsections, arguing generally that it has pleaded particular facts and asserting, again, that the statute should not be construed as restrictively as Wesley believes.

The court rejects the defendant's argument that the TCPA claims are not pleaded with sufficient particularity. Wesley does not dispute, for purposes of this section of its Motion, that the Amended Complaint states claims under § 47-18-104(b)(5) and (9). Moreover, the Amended Complaint specifically alleges that Wesley has engaged—and continues to engage—in specific acts that Westgate contends violate the Act, including, among other things: making deceptive or misleading statements that disparage the timeshare industry as a whole;[8] engaging in false and misleading advertisements by suggesting that it has legal expertise when it does not and implying that Westgate owners will not be subject to any penalty or legal consequence for failing to make

---

[8] Wesley contends that, even if the Amended Complaint does contain particularized allegations in support of the disparagement claim, a disparagement claim under § 104(b)(8) is "effectively a claim for trade libel, a species of defamation," which requires a showing that the challenged defamatory statements were "of and concerning" the plaintiff. (Doc. No. 106, at 12.) Wesley argues that the Amended Complaint does not allege that Wesley's advertisements mention Westgate explicitly or even by reference and, therefore, fails to satisfy the "of and concerning" rule. (Id. (citing *Steele v. Ritz*, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009); *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 717 (Tenn. Ct. App. 1983)). However, Wesley cites no caselaw to support application of the "of and concerning" requirement to a statutory disparagement claim under § 104(b)(8).

mortgage and other payments owed to Westgate; concealing that it has no legitimate means of fulfilling the promises it makes to its customers to extricate them from lawful and binding contracts with Westgate; intentionally taking no action on behalf of Westgate's owners after contracting with them, other than encouraging them to stop making payments to Westgate; deliberately obscuring its role in advising Westgate owners to breach their contracts; ghostwriting unsupported and fallacious claims for Westgate owners to send to Westgate by email; insisting that its customers lie to Westgate about Wesley's involvement; and impersonating Westgate owners in contacting Westgate. (Doc. No. 1 ¶ 100.) The court finds that these allegations, at least, are sufficiently specific to state a claim under the TCPA. The court further finds it unnecessary, at this juncture, to parse which specific provisions of the TCPA might be violated by the alleged conduct, since the defendant concedes for purposes of its Motion that the Amended Complaint states claims under at least two of § 104(b)'s subsections. A motion for summary judgment will be a more appropriate vehicle for seeking dismissal of claims under the individual provisions of § 104(b).

## IV.     CONCLUSION AND ORDER

For the reasons set forth herein, the defendants' Motion to Dismiss Count III (Doc. No. 105) is **DENIED**.

ALETA A. TRAUGER
United States District Judge