# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **WESTGATE RESORTS, LTD.,** *et al.*, | ) | |
| | ) | |
|    **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00599** |
| | ) | **Judge Aleta A. Trauger** |
| **WESLEY FINANCIAL GROUP, LLC,** | ) | |
| **and CHARLES WILLIAM** | ) | |
| **McDOWELL, III,** | ) | |
| | ) | |
|    **Defendants.** | ) | |

## MEMORANDUM and ORDER

Before the court is the plaintiffs'[1] Motion for Leave to File Third Amended Complaint (Doc. No. 199), filed along with the proposed Third Amended Complaint ("TAC") (Doc. Nos. 199-1, 214).[2] The defendants oppose the motion in part. (Doc. No. 202.) For the reasons set forth herein, the motion will be granted in part and denied in part.[3]

## I.    PROCEDURAL HISTORY

In the Second Amended Complaint ("SAC"), filed on October 4, 2021, Westgate alleges that defendants Wesley Financial Group, LLC and Charles William McDowell III (collectively, "Wesley" or "defendant," in the singular) violated the Lanham Act, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. § 501.201, *et seq.*), and the Tennessee

---

[1] The plaintiffs are sixteen related entities, all with "Westgate" in their name, that are in the business of "developing, financing, managing, and selling timeshare resort properties throughout the United States." (Doc. No. 173, at 2.) They are referred to collectively herein, in the singular, as "Westgate" or "plaintiff."

[2] At the court's direction, Westgate filed a reformatted version of the proposed TAC (for the court's convenience), as a result of which it is now in the record in two places.

[3] Because the version of the proposed TAC filed at Doc. No. 214 is not denominated as a "proposed" pleading and because the court is denying in part Westgate's motion, the court will direct the Clerk to strike this document to avoid confusion in the record.

Consumer Protection Act ("TCPA") (Tenn. Code Ann. §47-18-101, et seq.) through actions related to Wesley's advertising, marketing, and timeshare cancellation services. (Doc. No. 173.) Wesley filed an Answer denying Westgate's substantive allegations. (Doc. No. 175.)

In March 2021, the parties filed a Joint Motion to Modify Initial Case Management Order, which stipulated that both parties had "worked diligently to adhere to the deadlines" in the original Case Management Order ("CMO") (Doc. No. 107) but were encountering difficulties in producing Wesley's electronically stored information relating to client files due to the manner in which the information was stored and the volume of data at issue. (Doc. No. 137, at 1, 2.) The parties detailed their efforts to work together to resolve the complications and proposed an extension of all remaining deadlines set forth in the original CMO by six months. The court granted this motion and, at the same time, entered an Order resetting the trial for November 29, 2022. (Doc. Nos. 138, 139.) The amended CMO did not affect the deadline for filing motions to amend pleadings, however, as that deadline expired on October 1, 2020, well before the parties filed the Joint Motion. (*See* Doc. No. 107, at 4.)

Nonetheless, Westgate filed an Unopposed Motion for Leave to File Second Amended Complaint in October 2021, which the court granted. (Doc. Nos. 169, 172.) The plaintiff represented that the proposed SAC would simply clarify its factual allegations relating to the already pleaded claims "based on the most-recent document production and deposition testimony." (Doc. No. 170, at 3.) The SAC is now the operative pleading.

In January 2022, the court granted Wesley's Motion to Modify Initial Case Management Order by Extending Fact Discovery Only. (Doc. Nos. 198, 203.) This motion catalogued the vast quantity of discovery already sought and produced in this case and the additional discovery still sought by Westgate. In the same motion, Wesley acknowledged that Westgate had given notice of its intent to seek leave to file the TAC which, if granted, might "require[e] even more discovery"

as well as require "additional pleadings or motion practice by [Wesley]." (Doc. No. 198, at 4.) The discovery deadline has now been extended to April 15, 2022. (Doc. No. 203.)

## II.    THE PLAINTIFF'S MOTION

Citing Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure, Westgate seeks leave to file the TAC. Westgate asserts that the TAC does not add any new parties, new causes of action, or new factual allegations, and it will not "create any need for new discovery." (Doc. No. 199, at 3.) Rather, according to Westgate, it "will clarify the bases of Westgate's claims and narrow the issues for trial, as the parties near the end of discovery." (Doc. No. 199, at 2.) As Westgate explains, the proposed amendment would do four things:

> 1. dismiss the Lanham Act claim;
>
> 2. add citizenship and amount in controversy allegations to support diversity jurisdiction;
>
> 3. clarify that allegations relating to Defendants' use of caller ID spoofing technology— which have been alleged from the outset—also constitutes a violation of the Truth in Caller ID Act ("TICA"),[4] and that such violation is also actionable under the FDUTPA and TCPA; and
>
> 4. remove unnecessary allegations which Defendants have claimed support discovery as to hundreds of thousands of Westgate timeshare owners who have no relation to Defendants.

(Doc. No. 199, at 3.)

Westgate argues under Rule 16(b) that it has good cause to seek to amend outside the original deadline to amend pleadings and, under Rule 15(a), that amendment should be permitted because there has been no undue delay, bad faith, a showing of dilatory motives, repeated failure to cure deficiencies, undue prejudice, or futility.

Wesley has filed a Response (Doc. No. 202), opposing in part Westgate's Motion to Amend. Specifically, Wesley has no objection to the omission and dismissal of the Lanham Act

---

[4] Most courts appear to have abbreviated this statute as the TCIA. To avoid confusion, the court adopts Westgate's convention and will refer to it as the TICA.

claim and agrees that Westgate should be permitted to amend to add facts that confirm the existence of diversity jurisdiction, particularly given the dismissal of the federal claim and the removal of federal question jurisdiction. However, Wesley opposes the remaining proposed modifications on the basis that Westgate has failed to show good cause for the belated amendment, that it would be prejudiced by permitting the amendment, and that some of the proposed modifications, in any event, would be futile.

## III.     STANDARD OF REVIEW

"[W]hen a party seeks to amend its pleadings . . . after the expiration of scheduling order deadlines, it must show good cause under Rule 16(b)." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); Fed. R. Civ. P. 16(b)(4)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet" the scheduling order's requirements, but courts also consider 'possible prejudice to the party opposing the modification.'" *Id.* (quoting *Inge*, 281 F.3d at 625). To be clear, "[w]hile the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted . . . , it does not fulfill the 'good cause' requirement of Rule 16(b)." *Woodcock v. Ky. Dep't of Corrs.*, No. 5:12-CV-00135-GNS-LKK, 2016 WL 3676768, at *1 (W.D. Ky. July 6, 2016) (citation omitted).

Assuming the movant clears the Rule 16 "good cause" hurdle, the court must then consider whether the proposed amendment is permissible under Rule 15. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Under that rule, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) "embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (citation omitted). To determine whether to grant leave under this liberal policy, courts weigh several factors, including: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of

amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted).

## IV.    DISCUSSION

### A.    The Unopposed Amendments

Westgate states that, based on recently obtained discovery, it has "decided not to further pursue its Lanham Act claim." (Doc. No. 199, at 4.) In view of dismissal of the sole federal claim, it also seeks to amend the allegations regarding the various plaintiffs' citizenship, to support the existence of diversity jurisdiction. Wesley does not oppose these proposed amendments, and the court finds that good cause exists to dismiss a claim that Westgate no longer believes it can sustain and further, that good cause exists to include allegations fully establishing the existence of diversity jurisdiction, since the claim upon which the court's federal question jurisdiction has been premised will be dismissed. Accordingly, the court will grant the Motion to Amend, insofar as it seeks to dismiss the Lanham Act claim (SAC Count I, ¶¶ 97–115) and to supplement the jurisdictional allegations in Paragraphs 22–37 and 40–41 of the proposed Third Amended Complaint.

### B.    The Alleged TICA Violations

Wesley characterizes the proposed new allegations regarding the TICA as "insert[ing] a new claim that Wesley's alleged use of a program to mask the number of outgoing phone calls violates the Truth in Caller ID Act, giving rise to liability under the [TCPA] and [FDUTPA]." (Doc. No. 202, at 3.) It opposes this proposed amendment on the basis that Westgate has known about the facts related to this allegation at least since the filing of the First Amended Complaint in September 2020 (*see* Doc. No. 104 ¶¶ 100(i) (alleging that "Wesley has engaged [in] unfair and deceptive acts or practices" by "impersonating Westgate's owners, spoofing their caller IDs")) and has not shown good cause for not seeking to add a "belated Truth in Caller ID Act claim" well before now. (Doc. No. 202, at 8.)

As Westgate acknowledges, Rule 16(b)'s "good cause" standard primarily focuses on a plaintiff's diligence in meeting the scheduling deadline. *See Marie v. Am. Red. Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (observing that "[t]he overarching inquiry . . . is whether the moving party was diligent" in attempting to meet the court's deadlines (quoting *Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011)); *Shane v. Bunzl Dist. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008) (describing the "good cause" requirement as "a threshold that requires late-moving litigants to show that 'despite their diligence they could not meet the original deadline'" (quoting *Leary*, 349 F.3d at 907)).

Westgate also acknowledges that the deadline for amending pleadings expired in October 2020, but it argues that, at that time, the parties had conducted little discovery and, since then, the parties have had numerous discovery disputes and there have been "numerous delays in obtaining discovery from Defendants in this action." (Doc. No. 199, at 2 (citing Doc. Nos. 154, 157, 185)); *see id.* at 4 ("Defendants delayed—and continue to delay—document production to the extreme . . . .").) In other words, Westgate makes it sound as though Wesley has been dilatory in producing discovery. However, nothing in the record supports that implication. Rather, the record before the court indicates that both parties have been diligently engaging in discovery and that any difficulties in meeting the scheduling deadlines arise from the volume of data being produced and the format in which it is to be produced.

Regardless, Westgate contends that, despite its extreme hardship in obtaining discovery, it has only "recently" obtained documents that "reveal[] additional information as to how Defendants market and sell their supposed services, and how Defendants use caller ID spoofing," specifically through "depositions of Wesley corporate representatives, as well as depositions of Westgate timeshare owners who became Wesley customers." (Doc. No. 199, at 4.) Westgate claims that, "based on [this] discovery, Westgate has learned that—in addition to Wesley's use of caller ID spoofing being deceptive and unfair, which was already alleged—Wesley's use of caller ID

spoofing violates the Truth in Caller ID Act," which, it now claims, constitutes "an additional violation" of the FDUTPA and the TCPA, claims that have been alleged since the inception of this case. (*Id.*) Westgate argues that it is "not seeking to add any parties, or assert any additional causes of action," and that the new "facts" it seeks to allege will not "alter the scope of discovery or otherwise cause any delay because the facts—*i.e.*, those relating to the TICA violations—were already alleged, and the only changes are the legal conclusion to be drawn from those facts." (*Id.* at 5.)

Westgate last amended its pleading on October 5, 2021, less than three months prior to filing its current Motion to Amend. The SAC alleges that Wesley engaged in "caller ID spoofing," as follows:

> Wesley employees also routinely call Westgate and impersonate Westgate owners to deceive Westgate into believe it is talking to its own customers. During these contacts, Wesley employees make similar accusations. Wesley has taken this even further by employing various technological tools to deceive Westgate. This includes using software that spoofs the customers' phone numbers and makes it appear on caller ID systems that Wesley is calling Westgate from the customer's phone number . . . .

(SAC ¶ 74.) In the proposed TAC, Westgate now states:

> Wesley employees also routinely call Westgate, impersonate Westgate owners to deceive Westgate into believing it is talking to its own customers, and Wesley employees make similar accusations. Wesley has taken this even further by employing various technological tools to deceive Westgate, including
>
> a) using *technological tools* that spoof the customers' phone numbers and make it appear on caller ID systems that Wesley is calling Westgate from the customer's phone number. *These technological tools transmit misleading or inaccurate caller ID information, and Wesley uses the technological tools with the intent to defraud Westgate, cause harm to Westgate, or wrongly obtain something from Westgate that has value[.] Wesley's actions are prohibited by the Truth in Caller ID Act ("TICA"), and Wesley uses these technological tools in violation of the service providers' terms of use, which closely track TICA.*

(Proposed TAC ¶ 72(a) (new language in italics).)[5]

---

[5] The remainder of this paragraph, including subsections (b) through (e), contains proposed modifications that appear to be stylistic only.

Under the actual "counts" of the SAC, Westgate asserts that "Wesley has engaged in unconscionable, unfair, and deceptive acts or practices" in violation of the FDUTPA and has engaged in "unfair and deceptive acts or practices" in violation of the TCPA by, among other things, "impersonating Westgate timeshare owners, including spoofing their caller IDs, and in other ways." (SAC ¶¶ 124(n), 144(n).) It seeks to enjoin Wesley from "impersonating Westgate timeshare owners, including spoofing their caller IDs, and in other ways." (*Id.* ¶¶ 134(a)(xiv), 154(a)(xiv). In the proposed TAC, Westgate seeks to amend these allegations simply by including "in violation of TICA" after each appearance of "spoofing their caller IDs," such that each of the corresponding clauses would now read: "impersonating Westgate timeshare owners, including spoofing their caller IDs in violation of TICA, and in other ways." (Proposed TAC ¶¶ 102(n), 112(a)(xiv), 122(n), 132(a)(xiv).)

The TICA is not new: it was signed into law by President Obama in late 2010.[6] Although the Sixth Circuit does not appear to have addressed the question, most courts that have considered it have concluded that the TICA does not create a private right of action. *See McDermet v. John C. Heath, Attorney at Law, PLLC*, No. CV 17-12327-FDS, 2018 WL 627371, at *3 (D. Mass. Jan. 30, 2018) ("Accordingly, it is clear that Congress did not create a private right of action to enforce the [TICA]." (collecting cases)); *accord Hall v. Stankey*, No. 5:21-CV-111-TBR, 2021 WL 5999578, at *6 (W.D. Ky. Dec. 20, 2021) ("[A]t least one other district court within the Sixth Circuit has held that Section 227(e) does not provide for a private right of action, a position that several other district courts have taken as well." (collecting cases)). Rather, it provides for civil forfeiture penalties, 47 U.S.C. § 227(e)(5)(A), and criminal fines for persons who "willfully and knowingly" violate the law, § 227(e)(5)(B). In addition, section 227(e)(6) specifies that the "chief

---

[6] It was amended slightly, in ways not relevant to the plaintiff's allegations, in 2018.

legal officer of a State . . . may bring a civil action [under this act], as *parens patriae*, on behalf of the residents of that state."

While Westgate does not appear to be attempting to bring stand-alone claims for violation of the TICA, it also does not explain how violations of the TICA, *per se*, would constitute violations of state consumer protection laws under which its substantive claims are brought. Rather, what is relevant is whether the *conduct* that the plaintiff contends violates the TICA also violates the FDUTPA and/or the TCPA. And, in that regard, the relevant conduct—allegedly using technological tools to spoof Westgate's customers' telephone numbers, thereby intentionally and fraudulently misleading Westgate—is already alleged in the SAC. It is, therefore, entirely unclear what the new allegations actually add to the equation.[7]

Thus, if the court were to reach the question of prejudice, it would be difficult for Wesley to show that it would actually be prejudiced by the new allegations.[8] The bottom line, however, is that the plaintiff has not shown that the defendant's allegedly dilatory discovery production establishes good cause for not including the TICA-related allegations in the October 2021 SAC, particularly given the absence of (1) any actual proof that Wesley been dilatory in producing discovery; (2) any information regarding when Westgate actually learned the "new" information giving rise to its sudden discovery that Wesley's conduct might have violated the TICA; or (3) any description of the supposedly new information.[9] There is just no apparent reason that plaintiff

---

[7] The only new substantive factual allegation, as far as the court can discern, is that Wesley's conduct allegedly violates the terms of its contracts with its telecommunication service providers. Again, however, it is unclear why Wesley's alleged violation of contracts to which the plaintiffs are not parties would have any relevance to whether Wesley's conduct deceived the plaintiff or violated the relevant state laws.

[8] By the same token, it is difficult to see how denying leave to amend the pleading to include these proposed allegations relating to the TICA would prejudice the plaintiff either.

[9] The court acknowledges the possibility that this newly discovered information consists of Wesley's contracts with its telecommunications service providers. But, as set forth in Note 7, that information is irrelevant to the question of whether the defendant's conduct violated the TICA or the state statutory schemes on which Westgate's claims are premised.

could not have previously concluded—and pleaded—that caller ID spoofing might, as a matter of law, also violate the TICA. Westgate has not shown that, despite its diligence, it could not meet the original deadline for amending pleadings—or, at a minimum, included the TICA-related allegations in the October 2021 SAC. Because the plaintiff has not shown good cause, for purposes of Rule 16(b), the court will deny the motion to amend the complaint to add the references to the TICA, without reaching the question of prejudice.

The court also has no need to consider the Rule 15(a) amendment standard. The court nonetheless notes that amending the SAC to add references to the TICA would also be futile, insofar as Westgate cannot bring a private cause of action under the TICA anyway, and the only relevant question is whether it can show that Wesley's conduct violated the state statutes at issue, not whether its conduct violated the TICA.

### C.        The Proposed Removal of "Unnecessary Allegations"

In support of that portion of its motion seeking to omit "unnecessary allegations which Defendants have claimed support discovery as to hundreds of thousands of Westgate timeshare owners who have no relation to Defendants" (Doc. No. 199, at 3), Westgate asserts that, through "recent motion practice," it has learned that "Wesley is relying on immaterial allegations in the complaint to seek to expand the scope of discovery exponentially, when those allegations are unnecessary and can easily be excised from the complaint." (Doc. No. 199, at 3, 4 (citing Doc. No. 183, at 7).)[10] It asserts that it has good cause to excise the unnecessary allegations, because doing would "serve to reduce the scope of discovery." (*Id.* at 5.)

In response, Wesley describes the proposed revisions as seeking to "drop certain factual allegations to the effect that complaints asserted by Wesley's customers about Plaintiffs' deceptive sales practices describe 'conduct [that] did not occur.'" (Doc. No. 202, at 3.) Wesley characterizes

---

[10] Doc. No. 183 is Wesley's Memorandum in support of a Motion to Compel (Doc. No. 182) the production of documents, including documents pertaining to Westgate's sales practices.

the proposal to omit this language as an undisguised attempt by Westgate to "increase their chances of keeping their fraudulent sales tactics . . . out of discovery and away from scrutiny by the trier of fact." (*Id.*) Wesley argues that this amendment is not supported by good cause and, in addition, would be futile, because Westgate's allegedly deceptive sales practices will remain relevant to this litigation regardless of whether the amendment is permitted. (*Id.* at 9.)

Westgate does not actually identify which parts of the proposed TAC have been modified to remove the now "unnecessary allegations." The court instead, has been required to compare the SAC and the proposed TAC line-by-line to ascertain what changes Westgate proposes to make— a task the court should not be required to undertake. The court further notes that Magistrate Judge Frensley, upon referral, recently granted in part and denied in part Wesley's Motion to Compel Westgate to produce documents relating to its sales practices and customer complaints against it. In support of its Motion to Compel, Wesley argued that it sought information relevant to its defense that "Westgate engages in unfair and fraudulent sales practices, which are then used by Wesley in the process of providing its services to its customers." (Doc. No. 183, at 6.) Westgate opposed the discovery, in part, on the grounds that it was irrelevant, as "neither the truthfulness of customer complaints nor Westgate's claimed propensity to engage in fraudulent activity is at issue." (Doc. No. 191, at 13.) In addressing the relevancy question, the Magistrate Judge found, first, that Westgate's position was "at odds with [its] own Complaint" and cited numerous paragraphs of the SAC in which Westgate affirmatively avers that its contracts are valid and enforceable and none of its customers has a legitimate basis for setting them aside. (Doc. No. 208, at 9–10 (citing Doc. No. 173 ¶¶ 11, 22, 52, 61, 73, 108).) These are among those provisions that have been modified in the proposed TAC.

Based largely upon the comments in the referenced paragraphs—all of which Westgate now seeks to "excise"—the Magistrate Judge found that the complaint itself "repeatedly puts . . . at issue" the question of "whether Westgate engages in deception" and that "[i]nformation related

to whether Westgate customers do in fact have legitimate cause or justification to terminate/avoid their agreements is thus clearly relevant to Westgate's claims." (*Id.* at 10.) Further, however, and even more importantly, the Magistrate Judge found that "discovery related to Westgate's conduct is relevant to Wesley's defenses, including the defense that '[Westgate's] claims are barred because [Wesley's] alleged statements were truthful, [and] were not misleading or deceptive in any way.'" (*Id.* at 10 (quoting Answer, Doc. No. 175, at 21 (Twelfth Defense)).)

The court agrees with this analysis. It is clear from the record that the question of whether Westgate engages in deceptive practices has been at issue from the outset of this case, and Westgate only now seeks to amend its pleading to omit references to its own practices in order to attempt to limit the scope of discovery sought by Wesley. This does not constitute good cause. Moreover, as Wesley argues, this "cat" is already "out of the bag." (Doc. No. 202, at 5.) Even if the court were to permit all of the proposed excisions, Westgate's business practices and the question of whether it engages in deception will remain relevant.

Finding no good cause for the proposed excision of the now "unnecessary allegations" (Doc. No. 199, at 3), the motion to amend the pleading in this regard will, likewise, be denied. The court further finds, under Rule 15(a), that the proposed omissions would also be futile, insofar as they would not have the effect desired by Westgate—of permitting it to avoid discovery related to its business practices.

## V.     CONCLUSION AND ORDER

For the reasons set forth herein, Westgate's Motion for Leave to File Third Amended Complaint (Doc. No. 199) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED**, insofar as the plaintiff will be permitted to file a Third Amended Complaint that (1) omits the Lanham Act claim asserted in Count I of the SAC and the allegations supporting it; and (2) supplements and clarifies the allegations regarding the plaintiffs' citizenship, for purposes of establishing the existence of diversity jurisdiction. The motion is **DENIED** in all other respects.

The plaintiff **SHALL** file a Third Amended Complaint making the permitted amendments by or before **March 22, 2022**.

The Clerk is directed to **STRIKE** the Third Amended Complaint filed at Doc. No. 214, to avoid confusion in the record.

It is so **ORDERED**.

_____

ALETA A. TRAUGER
United States District Judge