**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WESTGATE RESORTS, LTD.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00599** |
| | ) | **Judge Aleta A. Trauger** |
| **WESLEY FINANCIAL GROUP, LLC,** | ) | |
| **and CHARLES WILLIAM** | ) | |
| **McDOWELL, III,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER: MOTIONS TO EXCLUDE TESTIMONY[1]

Both parties have filed motions to exclude expert testimony offered by the other: (1) the

defendants' *Daubert* Motion to Exclude Plaintiffs' Expert (Doc. No. 268); and (2) the plaintiff's[2]

Motion to Exclude Expert Anthony Kelly (Doc. No. 295). As set forth herein, both motions will

be granted.

## I.      THE DEFENDANTS' MOTION

The defendants' motion seeks to exclude the testimony of the plaintiff's proposed expert,

Tyler Maulsby, who proposes to offer his opinion that the defendants' actions at issue in this case

constitute the unauthorized practice of law. (*See generally* Doc. No. 270.) Maulsby's Expert

Witness Report states that he is a partner in the law firm of Frankfurt Kurnit Klein & Selz P.C., a

member of the firm's Legal Ethics and Professional Responsibility practice group, and admitted

---

[1] This Memorandum and Order presumes familiarity with the parties, the nature of the dispute, and the procedural history of this case.

[2] The plaintiffs are collectively referred to herein, in the singular, as "Westgate" or "the plaintiff."

to practice law in the state and federal courts in New York and New Jersey. (Doc. No. 270, at 3.) The defendants argue that (1) Maulsby's opinion is not relevant, because the unauthorized practice of law is not prohibited by the Tennessee Consumer Protection Act; (2) Maulsby's opinion would not be helpful to the jury; and (3) Maulsby's opinion improperly invades the province of the court by seeking to instruct the jury on the law. (Doc. No. 269, at 3–4.) Irrespective of whether Maulsby's opinion would be helpful or relevant, the court finds the defendants' third argument to be dispositive of the admissibility of his proffered opinions.

"Only licensed attorneys may engage in the 'practice of law' or the 'law business' in Tennessee." *Tenn. Env't Council, Inc. v. Tenn. Water Quality Control Bd.*, 254 S.W.3d 396, 403 (Tenn. Ct. App. 2007) (citing Tenn. S. Ct. R. 7, § 1.01). "[T]he Supreme Court of Tennessee possesses the sole and exclusive authority to regulate the practice of law and to define the unauthorized practice of law" in this state, and that court has adopted the following standard for determining what constitutes the practice of law:

> Functionally the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is his educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, non-lawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essential in the public interest whenever the exercise of professional legal judgment is required.

*Id.* (quoting *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn. 1995)). While the "process of determining whether [an individual's actions] constitute the practice of law is often fact intensive," whether such actions "require the exercise of professional legal judgment" and, thus, constitute the unauthorized practice of law is a question of law. *Id.* at 404, 403.

Federal Rule of Evidence 704 permits a witness to testify in the form of an opinion or inference to an "ultimate issue to be decided by the trier of fact." However, "it is not for the witnesses to instruct the jury as to applicable principles of law, but for the judge." *Shahid v. City of Detroit*, 889 F.2d 1543, 1548 (6th Cir. 1989) (citation omitted). To avoid invasion of this prerogative by expert witnesses, courts within the Sixth Circuit regularly disqualify experts who offer *legal* opinions. *See, e.g.*, *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible."); *Nelson v. Costco Wholesale Corp.*, No. 3:18-CV-278-BJB-RSE, 2021 WL 2459472, at *11 (W.D. Ky. June 16, 2021), aff'd, No. 21-5666, 2022 WL 221638 (6th Cir. Jan. 26, 2022).

Westgate argues that Maulsby's opinion should not be excluded, because he does not purport to offer an opinion as to the "ultimate issue" in this case—whether the defendants violated the TCPA. That argument is simply beside the point, because Maulsby seeks to offer an opinion as to a legal matter—whether the defendants' conduct constitutes the unauthorized practice of law. Moreover, the cases on which Westgate relies in support of the admissibility of expert legal testimony actually held that opinions as to legal ethics and professionalism (rather than the practice of law *per se*) were admissible. *See Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers, LLC*, No. 9:18-CV-80311, 2022 WL 1642865, at *4 (S.D. Fla. Mar. 31, 2022) (permitting the plaintiff's expert to offer an opinion on whether the practices of defendant DC Capital, a law firm, violated certain ethics rules governing law firms); *Wyndham Vacation Ownership, Inc. v. Sussman*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *2 (M.D. Fla. Nov. 5, 2021) (permitting the plaintiff's proffered expert to offer opinion testimony as to whether defendant Sussman, an attorney, had committed ethical violations).

In short, the court finds that, because the conclusion as to whether certain practices constitute the practice of law—as that term is defined by the Tennessee Supreme Court—is a question of law, Maulsby's proffered testimony invades the province of the court and is

inadmissible. *Accord Ross Bros. Constr. Co. v. Markwest Hydrocarbon, Inc.*, 196 F. App'x 412, 415 (6th Cir. 2006) ("This circuit has held that a district judge has discretion—and the duty—to exclude 'legal opinion' it deems improper, and this stands independent of Fed. R. Evid. 704."). The defendants' motion to exclude Westgate's proffered expert will be granted.

## II.    THE PLAINTIFF'S MOTION

In March 2021, the court granted the parties' Joint Motion to Modify Initial Case Management Order, thus extending until March 15, 2022 the deadline for the defendants to disclose experts. (Doc. Nos. 137 (Motion), 138 (Order).) In December 2022, in conjunction with their Response to Westgate's Motion for Partial Summary Judgment and Statement of Undisputed Facts, the defendants filed the Declaration of Anthony Kelly (Doc. No. 289-15), to dispute the plaintiff's assertion that "Wesley cannot do anything to speed up the process of cancellation through payment default." (*See* Doc. No. 289-1, Def.'s Resp. to Pl.'s SUF ¶ 45.)[3] The plaintiff now seeks to exclude the evidence proffered by Anthony Kelly, whom the plaintiff characterizes as an expert disclosed nine months after the deadline for expert disclosures and depositions. Westgate also argues that Kelly fails to articulate a methodology of any kind, much less a reliable methodology, and that his conclusions, in any event, are irrelevant, because the question of whether Wesley customers are able to obtain cancellation of their timeshares through payment default faster than non-Wesley customers is not a matter at issue in this case, because Wesley does not claim to sell a faster payment default.

The defendants respond that Kelly is not offered as an expert; instead, he is simply offered "solely for the purposes of authenticating a summary exhibit prepared and submitted under Fed.

---

[3] Wesley also disputes the statement on the basis that the evidence cited by Westgate "does not support the statement." (Doc. No. 289-1, Def.'s Resp. to Pl.'s SUF ¶ 45.)

R. Evid. 1006." (Doc. No. 325, at 1.) They also posit that Westgate has placed the efficacy of Wesley's services at issue, insofar as it has alleged that "Wesley deliberately deceives customers that it was the complaints [submitted to Westgate by Wesley]—as opposed to non-payment—that led to termination. . . . *The truth is that the complaints have no bearing on Westgate's recovery processes or timing*, and Wesley knows that." (*Id.* (quoting Doc. No. 265, at 7–8 (emphasis added by defendants)).) According to the defendants, Westgate's own data—compiled in Anthony Kelly's "summary charts"—establishes that "the results achieved by Wesley's customers are strikingly different from the results achieved by other timeshare owners." (*Id.*)

Kelly's Declaration states that he is a Director at FTI Consulting ("FTI"), that he has worked in FTI's Data and Analytics Group since 2017, and that he has "provided data analytics consulting services to Fortune 500 companies" since then, "including complex data acquisition and analysis for litigation and dispute resolution proceedings." (Doc. No. 289-15 ¶ 3.) His curriculum vitae is attached as an exhibit to his Declaration. He states that he has been retained by the defendants in this case to "summarize and prepare charts of certain voluminous data produced in this litigation and offers his Declaration "[i]n accordance with Fed. R. Evid. 1006." (*Id.* ¶ 4.)

Kelly references three large Excel files that the defendants provided to him and that, "according to counsel, contain lists of Westgate timeshare owners." (*Id.* ¶ 5.) Westgate apparently provided these files to the defendants in discovery. According to Kelly, the files "provide detail regarding the manner in which Westgate timeshare owners exited their timeshares, whether through foreclosure, deed in lieu of foreclosure, or purchaser default,"[4] and "key supporting dates" associated with the exits, including the contract start dates, last payment dates, and completion

---

[4] It is not clear how "purchaser default" is distinct from foreclosure and deed in lieu of foreclosure, since these outcomes are generally precipitated by purchaser default.

dates. (*Id.* ¶ 6.) Counsel for the defendants also provided to Kelly Excel files showing which Westgate timeshare owners used Wesley's services to exit their timeshares. (*Id.* ¶ 7.) Kelly used a particular program—Tableau—to analyze this data and to "summarize and visualize trends" between the groups of exiting timeshare owners who were and were not Wesley customers. (*Id.* ¶ 9.)

According to Kelly, Appendix 2 to his Declaration is a summary of the data included in the Excel files that "shows that [Wesley] accounts exited their timeshares through a Deed in Lieu of Foreclosure over 50% of the time, whereas non-[Wesley] accounts exited through a Deed in Lieu of Foreclosure less than 15% of the time." (*Id.* ¶ 10.) Appendix 3 to the Declaration, according to Kelly, shows that, from November 2017 to January 2022, the average number of months between the "Date Last Payment Made" and the "DIL Completion Period" was shorter for Wesley accounts than for non-Wesley accounts, "except for two, isolated instances around November 2018 and February 2020." (*Id.* ¶ 12.)[5]

Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

---

[5] The court has examined the charts attached to Kelly's Declaration and finds them to be more baffling than clarifying, in particular because Exhibit 2 contains only percentages rather than raw numbers, as a result of which it is impossible to ascertain what the percentages mean. That is, there is no information regarding how many Westgate timeshare owners who exited their timeshare agreements during the relevant timeframe were Wesley customers and how many were not. Exhibit 3 contains two spiky lines on a graph that purport to represent the average number of months it took Westgate owners who were Wesley customers and those who were not to extricate themselves from their timeshares from start to finish, but again with no additional explanation and no indication of the actual numbers at issue.

The Sixth Circuit has "interpreted Rule 1006 to include five distinct requirements in order for a summary exhibit to be deemed admissible." *United States v. Harris*, 881 F.3d 945, 950 (6th Cir. 2018) (citing *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998)).[6] Only the fourth of the so-called "Bray factors," *id.*, is at issue now: whether the "summaries" and Kelly's accompanying Declaration are "accurate and nonprejudicial," meaning that the proposed exhibits "summarize[] the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner. Nothing should be lost in the translation." *Bray*, 139 F.3d at 110. The summaries admitted into evidence under Rule 1006 may not be "embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise." *Id.*

It is clear in this case, as set forth above, that Kelly seeks to draw conclusions and inferences from the underlying data and that he has not simply summarized that data. The court, in fact, has no idea what the data consist of. In his own words, Kelly's objective was to "summarize and visualize trends" between Wesley and non-Wesley Westgate accounts—to analyze and derive conclusions from the data rather than to simply summarize it. The court therefore finds, for

---

[6] These factors are:

(1) the documents must be so voluminous that they cannot conveniently be examined in court by the factfinder, but it is not necessary that the documents be so voluminous as to be literally impossible to examine; (2) the summary's proponent must have made the documents available for examination or copying by other parties at a reasonable time and place; (3) the summary's proponent must establish that the underlying documents are admissible, such that a summary based on documents that are inadmissible for irrelevancy, unfair prejudice, lack of authenticity, or some other reason would also be inadmissible; (4) the summary must be accurate and non-prejudicial, meaning that it summarizes the underlying data accurately, correctly, and in a nonmisleading way and does not contain conclusions or inferences; and (5) the summary must be properly introduced, meaning the proponent should present the testimony of the witness who supervised its preparation.

*United States v. Hofstetter*, No. 3:15-CR-27-TAV-DCP, 2019 WL 5057176, at *2 (E.D. Tenn. Oct. 8, 2019) (summarizing *Bray*, 139 F.3d at 1109–10).

purposes of Westgate's Motion for Partial Summary Judgment, that Kelly's Declaration and attached exhibits do not qualify as mere summaries of voluminous data admissible under Rule 1006 and, instead, constitute expert analysis of such data disclosed nearly nine months after the expiration of the defendants' deadline for disclosing experts. The court will exclude Kelly's opinion on that basis.

## III.    CONCLUSION AND ORDER

For the reasons set forth herein, the defendants' *Daubert* Motion to Exclude Plaintiffs' Expert (Doc. No. 268) and the plaintiff's Motion to Exclude Expert Anthony Kelly (Doc. No. 295) are both **GRANTED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge