**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WESTGATE RESORTS, LTD.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00599** |
| | ) | **Judge Aleta A. Trauger** |
| **WESLEY FINANCIAL GROUP, LLC,** | ) | |
| **and CHARLES WILLIAM** | ) | |
| **McDOWELL, III,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER RE: MOTION TO EXCLUDE
EVIDENCE RELATED TO DEFENDANTS' STATUTE OF LIMITATIONS DEFENSE**

Although the defendants (collectively "Wesley") clearly pleaded the statute of limitations as an affirmative defense in their Answer to the Third Amended Complaint (Doc. No. 227, at 19), and the plaintiffs (collectively "Westgate") moved for—and were granted—summary judgment on some of Wesley's affirmative defenses (*see* Order, Doc. No. 387), neither party, regrettably, has moved for judgment on the potentially dispositive question of whether Westgate's claim under the Tennessee Consumer Protection Act ("TCPA") is time-barred. The issue, however, has now been raised by Wesley in its Response in Opposition to Plaintiffs' Motion for Preliminary Injunction (Doc. No. 449), and Westgate has moved to exclude the documents Wesley seeks to introduce into evidence as relevant to its statute of limitations defense in its Omnibus Motion in Limine (Doc. No. 463). The parties, in fact, have argued the issue extensively in that context. (See Doc. Nos. 464 (Westgate's Memorandum in Support of Omnibus Motion in Limine), 511 (Wesley's Response) 533 (Westgate's Reply).)

The court finds the issue sufficiently important to address it separately in this Memorandum and Order, and finds as a matter of law that Westgate's TCPA claim is not barred by the statute of limitations. Consequently, the court will grant that portion of Westgate's Omnibus Motion in Limine to exclude court filings and rulings in other lawsuits and any other documents Wesley seeks to introduce into evidence at trial solely for the purpose of establishing its statute of limitations defense.

## I.   LEGAL STANDARDS

Under Rule 401 of the Federal Rules of Evidence, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Unless expressly excluded by another evidentiary rule, relevant evidence is admissible. Fed. R. Evid. 402. Although motions *in limine* are not explicitly authorized by the Federal Rules of Evidence, the Supreme Court has recognized that district courts have authority to adjudicate such motions pursuant to their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Courts should exclude evidence *in limine* "only when evidence is clearly inadmissible on all potential grounds." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (citation omitted); *see also In re Davol, Inc.*, 575 F. Supp. 3d 924, 928 (S.D. Ohio 2021) (same).

## II.   THE PROFFERED EVIDENCE RELATING TO WESLEY'S STATUTE OF LIMITATIONS DEFENSE IS IRRELEVANT

The TCPA creates a private right of action for violations of the TCPA, providing, in relevant part:

> Any person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice . . . declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1). This court has already granted partial summary judgment to the Westgate plaintiffs on their TCPA claim, finding that "the defendants have deceived consumers, harmed Westgate, and violated the TCPA by (1) engaging in the unauthorized practice of law and thus representing that Wesley's services entail a 'legal' cancellation of Westgate owners' timeshares through something other than simply payment default and (2) representing that its services include credit repair services for Westgate owners who stop making maintenance and mortgage payments to Westgate." (Doc. No. 387, at 2.) The issues of whether Wesley's conduct actually caused Westgate monetary damages and, if so, in what amount remain to be determined at trial.[1] Moreover, the court was not called upon at the summary judgment stage to consider when Westgate's TCPA claim accrued or whether the claim, or any part of it, is time-barred.

The TCPA contains its own one-year statute of limitations, which states:

> Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

Tenn. Code Ann. § 47-18-110. Generally, the running of the statute of limitations is a question of law, unless there is a factual dispute as to "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong." *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn. 2010) (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 737 (Tenn. 1998)); *see also McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004) ("The determination of when a reasonable person should know that his injury was caused by some wrongful . . . act is generally a question for the trier of fact.").

---

[1] At summary judgment, Westgate adequately established harm in the form of defaults on timeshare owners' promissory notes, but the court did not actually reach the issues of whether each owner's default was caused by Wesley's conduct or as to the amount of Westgate's alleged damages.

Westgate filed suit on October 17, 2019. (Doc. No. 1.) If its claim accrued before October 17, 2018, one year earlier, then it will be time-barred. Wesley's position is that Westgate knew or should have known of its claim in this lawsuit more than one year before the date the lawsuit was filed, pointing to (1) other lawsuits brought by other timeshare companies against other timeshare exit companies, including companies with which McDowell was affiliated and against Wesley itself; (2) other lawsuits filed by Westgate against timeshare exit companies other than Wesley; and (3) lawsuits filed by other plaintiffs against other timeshare companies by Westgate's attorneys—all alleging TCPA violations or related claims, as long ago as 2010.[2] (Doc. No. 511, at 13; Doc. No. 449, at 17–20.)

In its Response to Westgate's Motion for Preliminary Injunction, Wesley anticipates that Westgate will rely on the "continuous tort" doctrine to argue that its claim is not time-barred, and it argues that the Tennessee Supreme Court long ago rejected the continuous tort doctrine in favor of the discovery rule. (Doc. No. 449, at 20–21.)Wesley maintains that federal courts applying Tennessee law have repeatedly held that the "TCPA's discovery rule trumps the continuous tort doctrine such that once a party *knows or should have known* of its TCPA claim, the one-year clock starts ticking, such that plaintiffs cannot rely on continuing TCPA offenses to make timely the ones they discovered over a year prior." (*Id.* at 21.)

Westgate's position is that the existence of other lawsuits on which Wesley relies is irrelevant, as such suits have no bearing on whether Wesley was harming Westgate or on whether

---

[2] Wesley also asserts that it is "axiomatic that counsel's knowledge is imputed to their client for the purpose of determining whether a claim is time-barred." (Doc. No. 511, at 13 n.12 (citing *Daniel v. Cantrell*, 375 F.3d 377, 385–86 (6th Cir. 2004)).) *Daniel*, indeed, held that the knowledge of an agent is imputed to the principal. It would not follow, however, that Westgate's counsel's knowledge of Wesley's business practices could be imputed to Westgate even prior to the time that Westgate engaged those attorneys to represent it.

Westgate knew or should have known that Wesley's conduct was harming it and, moreover, that it could not sue to recover for harm that had not yet occurred. It argues that "[e]ach of the Wesley customers for whose payment default Westgate is seeking damages hired Wesley in 2018 or later" and that "[t]here is no evidence whatsoever that Westgate knew or should have known prior to October 17, 2018 that Wesley was engaged in unlawful conduct that was harming Westgate." (Doc. No. 464, at 13.)

Westgate has never relied on the continuous tort doctrine—more commonly known as the "continuing violations" doctrine; it makes this point clear in its Reply (Doc. No. 533). The continuing violations doctrine "essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006). In other words, it is a tolling doctrine that operates to extend the statute of limitations. "The doctrine . . . allows a court to assert jurisdiction over a charge of discrimination occurring outside the limitations period and also permits the court to fashion a remedy extending beyond the limitations period." *Id.* (citations omitted); *see also Bouye v. Bruce*, 61 F.4th 485, 493 (6th Cir. 2023) ("The whole benefit of the continuing-violation doctrine is that it allows a plaintiff to sweep in a series of component acts that comprise a claim, if one of those acts was within the limitations period.").

And Wesley is correct that Tennessee courts (like the federal courts) have largely rejected the "continuing violations" doctrine outside the employment discrimination arena (and particularly the hostile-work environment context). *See Booker*, 188 S.W.3d at 643; *Bouye*, 61 F.4th at 492 (6th Cir. 2023) (noting that the court has been "'extremely reluctant'" to extend the continuing-violation doctrine outside the Title VII context" and declining to apply it to Fair Debt Collection

Practices Act claims); *see also Lindsey v. Allstate Ins. Co.*, 34 F. Supp. 2d 636, 649 (W.D. Tenn. 1999) (declining to apply continuing violations theory to TCPA claim to extend the statute of limitations). In any event, there is no dispute that the discovery rule applies to TCPA claims, such that a cause of action under the TCPA "accrues when the action giving rise to the claim is discovered." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000) (quoting Tenn. Code Ann. § 47-18-110 as providing that the running of the statute is triggered by "a person's discovery of the unlawful act or practice"); *see also Alsbrook v. Concorde Career Colls.*, 469 F. Supp. 3d 805, 836 (W.D. Tenn. 2020) (recognizing that "[t]he inclusion of the word 'discovery' incorporates the discovery rule into the TCPA" (citation omitted)).

The question here is what, exactly, is the "unlawful act or practice" for which Westgate seeks relief in this case. Wesley seems to believe that it is the entirety of its business practices and policies that constitutes the "unlawful practice" that the court has found to have violated the TCPA and that Westgate knew or should have known that Wesley and McDowell were engaged in this overarching business practice for more than a decade before filing suit—and certainly since sometime before October 17, 2018. However, even if the court were to presume that Wesley's understanding of what the offending "practice" consists of is correct, the other lawsuits against other timeshare companies and lawsuits by other timeshare companies against Wesley appear to be completely irrelevant to the timeliness of *Westgate's* claims against *Wesley*. The record is notably devoid of any information regarding when Wesley began targeting Westgate customers or when Westgate became aware that Wesley was targeting its customers; nor has either party pointed the court toward any evidence regarding when Westgate became aware that its customers were ceasing payment on their timeshare promissory notes because of their interactions with Wesley. Wesley has not suggested that Westgate (or any of its attorneys) contacted Wesley anytime before

October 17, 2018 to demand, for instance, that Wesley cease engaging with, or that it modify its communications with, Westgate timeshare owners. The other lawsuits that Wesley seeks to put into evidence do not constitute evidence, circumstantial or otherwise, of Westgate's knowledge (actual or constructive) that it was being harmed by Wesley's practices generally.

More to the point, the court is not persuaded that Wesley's overall way of doing business is the "unfair or deceptive act[] or practice[]" made actionable by the TCPA. Section 47-18-110 establishes that it is a "consumer transaction" that "giv[es] rise to the claim for relief." Wesley engages in a "consumer transaction" each time it engages with a specific individual whom it seeks to induce, over the course of a series of interactions, to engage Wesley to help that individual get out of the individual's timeshare contract. And each consumer transaction has the potential to give rise to a separate cause of action. In this case, the "consumer transactions" at issue are Wesley's contacts with each of the 439 individual timeshare owners (or former timeshare owners) with respect to whose default on their promissory note Westgate seeks damages.[3] (*See* Doc. No. 533, at 5 ("Westgate's position is that it has a separate TCPA claim each time Wesley engages in deceptive or unfair conduct that causes harm to Westgate—*i.e.*, when Wesley deceptively signs up a new customer and induces non-payment to Westgate.").) By granting summary judgment on this issue, the court has found that Wesley's deceptive practice violated the TCPA, but that violation did not give rise to a cause of action until it actually caused harm to Westgate. In other words, Wesley did not injure Westgate merely by developing protocols for its interactions with timeshare owners generally, or even with Westgate timeshare owners specifically; it violated the TCPA each time it (1) engaged in a deceptive practice declared unlawful by the TCPA (2) in the course of a consumer

---

[3] The record is unclear as to when Westgate's claim for damages was narrowed down to these 439 timeshare owners.

transaction with a Westgate timeshare owner (3) that caused Westgate damages. *See Redwing v. Cath. Bishop*, 363 S.W.3d 436, 458 (Tenn. 2012) (reiterating that a cause of action "accrues when the plaintiff knows or should know that it sustained an injury 'as a result of wrongful . . . . conduct by the defendant" (quoting *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)).

None of the cases Wesley cites in support of its statute of limitations theory holds to the contrary. In *Potts v. Celotex*, 796 S.W.2d 678 (Tenn. 1990), the court simply held that the statute of limitations began to run when the plaintiff's mesothelioma was diagnosed or reasonably could have been diagnosed and the plaintiff had reason to believe that the condition was caused by his exposure to the defendants' asbestos-containing products. In *Alsbrook v. Concorde Career Colleges*, 469 F. Supp. 3d 805, 837 (W.D. Tenn. 2020), the court held that the plaintiffs learned of their injury no later than their dates of graduation, by which time they knew or should have known that the defendant had misled them by representing that the programs they were enrolled in were accredited or would be accredited by the time of graduation. In *Lindsey v. Allstate Insurance Co.*, 34 F. Supp. 2d 636, 649 (W.D. Tenn. 1999), the plaintiffs' TCPA claims were barred by the statute of limitations where the plaintiffs "clearly averred that they discovered Defendant's fraudulent and misleading insurance practices in 1996" but did not bring suit until 1998.

In *Middle Tennessee Occupational & Environmental Medicine, Inc. v. First Health Group Corp.*, No. 3-05-0218, 2005 WL 3216282, at *4 3(M.D. Tenn. Nov. 28, 2005) (Echols, J.), the court indeed rejected the plaintiff's argument that each time the defendant "wrongfully withheld funds was a separate act and should have its own accrual date for purposes of the statute of limitations." The court held that, under Tennessee's "single injury" rule, "one tortious act gives rise to but one indivisible claim for damages." *Id.* (quoting *Potts*, 796 S.W.2d at 680). The court,

however, did not distinguish between the plaintiff's conversion and TCPA claims or describe which "tortious act" was alleged to have given rise to the plaintiff's TCPA claim.

In short, the court finds that Wesley's statute of limitations defense would only be effective with respect to specific consumer transactions with Westgate timeshare owners that caused Westgate to sustain an injury that it knew or should have known about, and knew or should have known was connected to Wesley's conduct, before October 17, 2018. Axiomatically, this could only apply to Westgate timeshare owners who, because of Wesley's deceptive conduct, defaulted on their timeshare notes prior to October 17, 2018, because, prior to such default, Westgate had not suffered an injury arising from the particular consumer transaction. As Wesley has not argued that any one of the 439 Notes at issue in this case went into default before that date, it does not appear that any part of Westgate's claim is time-barred. Moreover, none of the evidence regarding other lawsuits is relevant to or probative of Wesley's statute of limitations defense or, as far as the court can tell, any other matter at issue in this case.

## III.    CONCLUSION

In sum, the court finds that the statute of limitations has not run with respect to Westgate's TCPA claim, insofar as Westgate seeks damages in connection with timeshare owners who defaulted on their timeshare note—allegedly as a result of Wesley's wrongful conduct—within one year prior to the date that Westgate filed this lawsuit. The evidence of other lawsuits Wesley seeks to introduce into evidence is irrelevant, and Westgate's motion to exclude it is **GRANTED** on that basis.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge